UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RACHEL DAWN MCLEMORE and<br>JASON LEE TACKETT,<br><br>       Plaintiffs,<br><br>    v.<br><br>EAST PRAIRIE, MISSOURI, et al.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 1:25-cv-00097-SNLJ<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Plaintiffs Rachel Dawn McLemore and Jason Lee Tackett brought this civil action under 42 U.S.C. § 1983 alleging constitutional violations by the City of East Prairie, Missouri and City employees.  [Docs. 1, 4].  Now before the Court are two motions filed by Plaintiff Jason Tackett: a motion to proceed in the district court without prepaying fees or costs [Doc. 2] and an "Emergency Motion for Temporary Restraining Order and Preliminary Injunction" [Doc. 5].  For the reasons stated below, the Court will strike Plaintiff McLemore from this case and deny the motions.

### Plaintiff Rachel Dawn McLemore

Plaintiffs are roommates who own multiple properties located in East Prairie, Missouri.  [Doc. 4 at ¶ 10].  Both Plaintiffs appear to have signed the Complaint [Doc. 1] and the First Amended Complaint in this matter [Doc. 4], but only Plaintiff Tackett signed the motion to proceed without prepayment of fees or costs [Doc. 2] and the motion seeking emergency relief [Doc. 5].  Although federal law authorizes Plaintiff Tackett to plead and conduct his own case personally, *see* 28 U.S.C. § 1654, he is not a licensed

attorney and, therefore, he may not represent other individuals in federal court. *See Jones ex rel. Jones v. Correctional Medical Services, Inc.,* 401 F.3d 950, 952 (8th Cir. 2005) (stating that "a non-attorney … may not engage in the practice of law on behalf of others"); *Iannaccone v. Law*, 142 F.3d 553, 558 (2nd Cir. 1998) (stating that "because pro se means to appear for one's self, a person may not appear on another's behalf in the other's cause. A person must be litigating an interest personal to him."); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating that to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"). Because a non-attorney pro se litigant may not represent someone else in federal court, the Court will strike Plaintiff Rachel Dawn McLemore from this action.

## Motion to Proceed without Prepayment of Fees and Costs

The Court may authorize the commencement or prosecution of a civil action without prepayment of fees if a plaintiff demonstrates he or she "is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). Proceeding without prepayment, or *in forma pauperis* status, is a matter of privilege, not of right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). To enjoy the statute's benefits, a litigant need not show that he is "absolutely destitute," but he must demonstrate that, because of his poverty, he cannot pay for the litigation costs and still be able to provide for the necessities of life. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948); *see also Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000).

2

Under the Local Rules of this Court: "An application to proceed in forma pauperis shall be accompanied by a statement of the applicant's financial information set forth on a form provided by the Court."  E.D. Mo. L.R. 2.05(A).  Additionally, the federal statute governing *in forma pauperis* actions, 28 U.S.C. § 1915, requires the applicant to submit "an affidavit that includes a statement of all assets such [plaintiff] possesses."  28 U.S.C. § 1915(a)(1).

In this case, Plaintiff's Application contains incomplete financial information in violation of Local Rule 2.05(A) and the § 1915.  According to the Application, Plaintiff earns income from both "Business, profession, or other self-employment" and "other sources."  [Doc. 2 at ¶ 3].  But in the follow-up question, asking for the amount of income received and future income expected from these sources, Plaintiff states only: "Snap benefits 292 month." [*Id.*].  Plaintiff provides no information on the income he earns through "Business, profession, or other self-employment."

Further, in the First Amended Complaint, Plaintiff states that he co-owns six properties located in East Prairie, Missouri, [Doc. 4 at ¶ 10], but he failed to list those assets on the Application [Doc. 2 at ¶ 5].  Plaintiff's Application must include information on all the income and assets that Plaintiff possesses.  *See* 28 U.S.C. § 1915(a)(1).  Without complete income or asset information, the Court cannot determine whether the costs of litigating this matter would prevent Plaintiff from being able to provide for the necessities of life.

Therefore, Plaintiff's motion to proceed without prepayment of fees and costs will be denied without prejudice.  If Plaintiff wishes to proceed in this action, he must either

3

file a new Application with complete answers, or he pay the full $405 filing fee.

## Motion for Emergency Relief

### I.    Facts Alleged in the First Amended Complaint[1]

McLemore and Tackett are roommates who own six properties together, located in East Prairie, Missouri in Mississippi County.  The First Amended Complaint details many grievances and disputes between these roommates and employees of the City of East Prairie, dating from 2020 to the filing of the Complaint.  As Plaintiff McLemore has now been struck from this case, only the factual allegations involving Plaintiff Tackett will be considered herein.  Named defendants include the City of East Prairie, Colin Cecil (City employee), Lorie Christian (City police chief), and Unknown Blake (City police officer).  *Id.*

The allegations of the First Amended Complaint are difficult to decipher.  The facts are not presented sequentially in time, allegations regarding events at multiple properties are intermingled, and it is unclear exactly which interactions with named Defendants involved Tackett and which involved McLemore.  However, it appears that the majority of Tackett's claims involve a property at "207 Powers Street."  This is also the property at issue in Plaintiff's motion for emergency relief.

#### a.  Allegations involving 207 Powers Street

According to Plaintiff Tackett, he contacted city employee Colin Cecil in January 2022 about possibly purchasing the property at 207 Powers Street and inquired about

---

[1] The facts alleged in the First Amended Complaint are taken as true only for purposes of the motion seeking a TRO.

why the property had been condemned.  Cecil told Plaintiff that he was "unaware of any reasons" for condemnation and that he had no information on the property, but that he would work with Tackett to bring the property out of condemnation status if Plaintiff purchased it.  Plaintiff purchased the property at 207 Powers Street in February 2022.  By that date, Cecil had not provided Plaintiff with a list of code violations concerning the property and when Plaintiff requested a list again in March 2022, Cecil did not provide it.

In early April 2022, Plaintiff received a notice letter of condemnation, dated March 31, 2022, and a sign was posted on the Powers property stating that it was condemned for multiple code violations.  The letter demanded that Plaintiff respond with a plan of action by April 15th.  It threatened fees, liens, and demolition for failure to comply.  Plaintiff submitted a detailed plan, with drawings, on April 25th.  The following day, Plaintiff received notice that he had been denied a permit.  Plaintiff was provided with an additional list of problems with the property at that time.

It is unclear from the First Amended Complaint what, if anything, transpired in the subsequent few years.  However, nearly three years later, on February 5, 2025, Plaintiff received a "second" notice of condemnation.  Because there was "no visible sign of work done" since the initial notice in March 2022, Plaintiff was ordered to demolish the structure by March 31, 2025.  Plaintiff states that defendant Lorie Christian, the chief of police for the City, made a "surprise visit" to the Powers property on March 31, 2025— the deadline for demolition—informing Plaintiff that he could not be on the property working "after dark."  Around that time, Plaintiff states that he started demolition on the property.

On April 9, 2025, Plaintiff went to the City's police department to report that his car had been stolen from the Powers property. Plaintiff was taken to a room by Defendant Blake, read his rights, and questioned about a different stolen car. During the questioning, Blake told Plaintiff that he had responded to a call concerning suspicious activity at the Powers property and although he found no suspicious activity, he did seize Plaintiff's car. Plaintiff alleges that this seizure violated his Fourth, Fifth, and Fourteen Amendment rights.

About a month later, on May 9, 2025, Plaintiff was working at the Powers property from 7 to 9:30 pm when police chief Christian and officer Blake arrived to tell him "that he was not to be there working." Plaintiff acknowledged the City noise ordinance but stated that he should be able to work until 10pm. Plaintiff alleges that office Blake threatened him with arrest for peace disturbance. Plaintiff initiated this action less than a month later, on June 2, 2025. [Doc. 1].

### b. Other Allegations of the First Amended Complaint

In addition to the allegations involving the 207 Powers property, Plaintiff also asserts that police chief Christian made unexpected visits to Plaintiff's place of residence (711 Mitchell Street), concerning code enforcement and ownership of the trailer on his property; that defendant Cecil harassed him "through arbitrary code violations" and "with threats of liens, or fines, or demolition;" and that officer Blake handcuffed Plaintiff and falsely accused him of "putting a gun in someone's mouth."

Plaintiff states that the actions of the Defendants have caused him "significant financial loss, emotional distress, and physical harm." Plaintiff asserts that the facts

6

alleged are "part of a broader pattern of unconstitutional practices by the City" and that Defendants' actions have "made it impossible for Plaintiff to effectively minister to the community, or live peacefully."

Based on these facts, Plaintiff seeks relief under four legal claims: (1) a § 1983 claim under the Fourteenth Amendment for a violation of due process; (2) a § 1983 claim under the Fourth Amendment for unlawful seizure; (3) a § 1983 claim under the First and Fourteenth Amendments for harassment and abuse of authority; and (4) a § 1983 claim for municipal liability based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978). [Doc. 4 at 5-6].

### c. Relief Sought

Plaintiff seeks declaratory relief, injunctive relief, and compensatory and punitive damages. He also seeks an order requiring Defendants to complete training and requiring the City to "establish and fund an independent civilian police academy." [*Id.* at 6].

## II. Arguments for Emergency Relief

Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction seeks emergency relief to prevent the City of East Prairie's "attempt to take Plaintiff's property located at 207 Powers St." [Doc. 5 at 1]. Plaintiff alleges that his First Amended Complaint establishes the City's "intent to take/demolish/enter the property." Plaintiff asserts that he needs immediate relief because the City "is expected to act before the Court can rule." According to Plaintiff, he has a strong likelihood of success on the merits of his case, the harm to him outweighs any inconvenience to the City, and granting relief serves the public interest. Finally, Plaintiff asserts that if immediate relief is not

granted, Plaintiff will suffer irreparable harm including "loss of property and rights" and "loss of his home[2] and constitutional rights." [*Id.*].

Plaintiff asks the Court to issue a temporary restraining order prohibiting the City of East Prairie from "taking, demolishing, or otherwise acting upon[] the property at 207 Powers St." [*Id.* at 2]. Plaintiff also requests an expedited hearing. [*Id.*].

## III.    Discussion

Plaintiffs' Motion for Temporary Restraining Order was submitted without adequately giving notice to Defendants under Federal Rule of Civil Procedure 65(b)(1). Under Rule 65(b)(1), a temporary restraining order may be issued without written or oral notice to the adverse party or its attorneys only if:

> (A) specific facts in an affidavit or *a verified complaint* clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and

> (B) the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.

(emphasis added). Plaintiffs' Complaint is unverified, and the parties are unrepresented. Plaintiff has not indicated that he has taken any steps to notify the Defendants of this case or his request for emergency relief. Therefore, it is inappropriate to hear this matter *ex parte*, i.e., without all parties present.

Moreover, an injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). Whether to grant a

---

[2] The Court notes that according to the First Amended Complaint, Plaintiff's "place of residence" is at 711 Mitchell Street—not the 207 Powers Street property. *See* [Doc. 4 at 3].

temporary restraining order or a preliminary injunction turns on four factors: (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party will succeed on the merits; and (4) the effect on the public interest. *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.,* 799 F.2d 1219, 1222 (8th Cir. 1986).[3]  The burden of proof is on the party seeking injunctive relief. *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987).

Plaintiff has not met that burden here. According to the facts alleged by Plaintiff, after Plaintiff purchased the property at 207 Powers Street in the City of East Prairie (knowing it had been condemned), the City notified Plaintiff in writing in April 2022 of code violations and directed him to submit a written plan of action. Although Plaintiff did submit a plan ten days after the City's deadline, his work permit was denied because additional problems were determined to exist at the property which would have to be remedied to remove condemnation status. Almost three years later, in February 2025, Plaintiff received a second notice of condemnation about the property, and he was ordered to demolish it by March 31, 2025. Plaintiff alleges that the City "did not allow … time to correct violations before condemnation," [Doc. 4 at 4], but this almost three-

---

[3] The same standard applies to a preliminary injunction and a temporary restraining order. *See S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project,* 877 F.2d 707, 708 (8th Cir. 1989).

year gap between notices indicates otherwise.  According to the second notice, there was "no visible sign of work done" over this multi-year period.  [*Id.*]  Furthermore, for reasons unclear to the Court, when the police chief visited Plaintiff at the property on the deadline for demolition, the visit was a "surprise" to Plaintiff.  And most importantly, Plaintiff admits that he already started the demolition of the structure on the property in April 2025.  [*Id.*].

These facts do not suggest that Plaintiff will suffer irreparable harm if the City demolishes the structure on Plaintiff's property at 207 Powers Street—in fact, Plaintiff has already started the work himself.  Furthermore, the Court does not find that Plaintiff is likely to succeed on the merits of his claims.  He alleges that the City has been harassing him with code violations, but he also admits that he has not submitted a valid plan of action to the City for repair of all cited violations, in the three years since he received notice of the violations.  Plaintiff does not allege that he has completed any repairs in an attempt to get the property out of condemnation status.  It appears that Plaintiff still does not have a plan of action.  Finally, the Court does not see how the public interest is served by preventing the City from taking action on a property that has been condemned for over three years.

As such, after weighing the factors listed above, the Court finds that Plaintiff has failed to demonstrate at this stage of the proceedings that he is likely to succeed on the merits of his claims and that he will suffer an immediate and irreparable injury if the Court does not grant the requested relief.  Moreover, as noted above, Plaintiff's fee status is undetermined in this case, as his motion to proceed without prepayment of fees or costs

is being denied as incomplete and he has not paid the filing fee. For these reasons, Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction will be denied without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall **STRIKE** Plaintiff Rachel Dawn McLemore from this action.

**IT IS FURTHER ORDERED** that Plaintiff Tackett's Application to Proceed Without Prepaying Fees or Costs [[Doc. 2] is **DENIED without prejudice.**

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to send Plaintiff Tackett a blank Application to Proceed in District Court without Prepaying Fees or Costs form.

**IT IS FURTHER ORDERED** that Plaintiff Tackett must either pay the full $405 filing fee or submit a completed Application in accordance with the instructions set forth herein, within **fourteen (14) days** of the date of this Order.

**IT IS FINALLY ORDERED** that Plaintiff Tackett's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [[Doc. 5] is **DENIED without prejudice.**

Dated this 13th day of June, 2025.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE