UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JASON LEE TACKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:25-cv-00097-SNLJ |
| | ) | |
| EAST PRAIRIE, MISSOURI, | ) | |
| COLIN CECIL, | ) | |
| LORIE CHRISTIAN, and | ) | |
| OFFICER JOHN DOE | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**DEFENDANTS CITY OF EAST PRAIRIE, MISSOURI, COLIN CECIL, AND LORIE CHRISTIAN'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW Defendants, East Prairie, Missouri, Colin Cecil, and Lorie Christian ("Defendants"), by and through undersigned counsel, and for their Amended Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), state as follows:

I.   **INTRODUCTION**

Plaintiff's Second Amended Complaint, pared down to the relevant sequence of events alleged therein, sets forth a simple fact pattern demonstrating that Plaintiff's Second Amended Complaint should be dismissed.  Plaintiff alleges his Constitutional rights were violated by the City of East Prairie, Missouri and its agents in that there was "improper and warrantless seizure of Plaintiff's Property, threats of property demotion and liens and/or the full extent of the law, repeated denial of due process protections and harassment by city official, including false accusations and intimidation."  (*See* Second Amended Complaint ECF 11, Introduction pg. 1). Plaintiff seeks to bring his claims under 42 U.S.C. 1983.

Plaintiff's Second Amended Complaint argues that "the claims arise from the policies and practices of the city, not state or federal government." (*See* Second Amended Complaint, ¶ 8).  He alleges that in January of 2022 he inquired about a condemned property located at 207 Powers St., East Prairie, Missouri, and was told by the Code Enforcement Officer, Defendant Cecil, that if he corrects the violations the property could be removed from condemnation.  *Id*. at ¶¶ 9-11.  Plaintiff alleges he intended to remedy the violations and he purchased the property on February 15, 2022, before receiving the reasons for condemnation.  *Id*. at ¶ 12.  Defendant Cecil informed Plaintiff that Defendant could make a comprehensive list of necessary repairs if Plaintiff granted him access to inside the structure, which Plaintiff declined to grant Defendant access.  *Id*.  Plaintiff began making repairs to the property and Defendant Cecil issued notice of condemnation for multiple violations.  *Id*. at ¶¶ 13-14.  Plaintiff was told by Defendant Cecil that he walked around the outside of the property and the north wall was bowed and possibly the south wall.  *Id*. at ¶ 16.  Plaintiff was not allowed to obtain a permit to begin demolition until he allowed Defendant full access to the property in July 2022.  *Id*. at ¶ 17.  Plaintiff was informed that he was not supposed to be living in the condemened house in March of 2023.  *Id*. at ¶ 22.  Plaintiff broadly alleges a plan to enforce code by putting liens/fines against properties to get people to sign over their deeds to the City.

On February 5, 2025, Plaintiff received a certified letter containing a Second Condemnation Notice for the property located at 207 Powers St., stating that no work appears to have been done at the condemned property.  *Id*. at ¶ 26.  On March 31, 2025, Defendant Christian told Plaintiff it was reported he was working at the condemned Powers St. house at night, which he was not supposed to do.  *Id*. at 29.  On May 9, 2025, Plaintiff was again working on the 207 Powers St. property at night, and Defendant Christian and Defendant John Doe again told him he is not supposed to be working there at night.  *Id*. at ¶ 32.

On March 31, 2023, Defendant Lorie Christian stopped at Plaintiff's home to inform Plaintiff that automobiles were parked too close to the street. *Id*. at ¶ 23.   Two years later, on March 24, 2025, Defendant Christian and unknown officer questioned Plaintiff and his roommate about a trailer and automobile. *Id*. at ¶ 28.  The Officers asked Plaintiff where he got the trailer and Plaintiff's roommate presented a homemade title she received with the trailer. *Id*. at ¶ 28.  On April 9, 2025, Plaintiff noticed his 2002 Chevy Suburban that was parked at the 207 Powers St. address was gone. *Id*. at 30.  Plaintiff went to the East Prairie Police Department to report his vehicle missing or stolen where he was allegedly read his rights and questioned about suspicious activity at 207 Powers St. and told that the license plates for the Chevy Suburban came back stolen. *Id*.  Plaintiff informed Defendant Officer John Doe that his roommate had reported the license plate lost and she must have forgotten to report it found. *Id*.  Plaintiff's story was validated, and he was free to go. *Id*.

Plaintiff filed his original Complaint on June 2, 2025.  (ECF 1).  On June 3, 2025, Plaintiff alleges Defendant Officer John Doe stopped at Plaintiff's home when Plaintiff and his roommate's son came back from getting pizza and Officer John Doe placed Plaintiff in too tight handcuffs on his driveway and put him in the back of a police cruiser. (*See* Second Amended Complaint, ¶ 34). Defendant Officer John Doe informed Plaintiff that Plaintiff had stuck a gun in someone's mouth in Sikeston, Missouri. *Id*.  Plaintiff and his roommate's 13-year-old son had just been in Sikeston to pick up pizza. *Id*.  Defendant Officer John Doe allegedly searched the vehicle Plaintiff and his roommate's son had just got out of and then asked Plaintiff's roommate if her son could speak to a detective from Scott County. *Id*.   An off duty East Prairie Officer, County deputy and two state troopers allegedly arrived on the scene. *Id*. at ¶ 35.  The County Deputy read Plaintiff his rights and searched Plaintiff's person. *Id*.  A Scott County Juvenile Officer later contacted Plaintiff's

3

roommate about charges being brought against her son. *Id*. at 38.  Plaintiff states he sent notice of the lawsuit to the City on June 14, 2025.  *Id*.

Plaintiff attempts to bring all his claims under 42 U.S.C. 1983.  He alleges Count I: Violation of Due Process for deprivation of property (Fourteenth Amendment), Count II: Unlawful Seizure for seizing his 2002 Chevy Suburban (Fourth Amendment), Count III: Harassment and Abuse of Authority against Defendants Christian and Officer John Doe (First and Fourteenth Amendments), and Count IV: Municipal Liability.

Plaintiff's Second Amended Complaint fails to state a claim for which relief may be granted and, therefore, should be dismissed.

## II.   ARGUMENT

### 1.   Plaintiff's Second Amended Complaint should be dismissed because the facts alleged do not amount to a violation of the Fourteenth or Fourth Amendment.

Plaintiff's Second Amended Complaint does not state a valid claim for a violation of the Fourteenth Amendment Equal Protection Clause.

> "The Equal Protection Clause requires that the government treat all similarly situated people alike. The Supreme Court recognizes an equal protection claim for discrimination against a "class of one". Wherein a claim such as this one does not involve a suspect class or a fundamental right, the proper level of scrutiny is a rational relationship test. The purpose of a class-of-one claim is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." A class-of-one claimant must prove that the State, "intentionally treated [it] differently from others similarly situated and that there is no rational basis for the difference in treatment."

*Palmore v. City of Pacific,* 851 F. Supp. 2d 1162, 1170 (E.D. Mo. 2010) (internal citations omitted).  Plaintiff's allegations do not adequately form the basis for an equal protection violation. Moreover, the four corners of the Second Amended Complaint form a rational basis for the Defendant Officers (Christian and Doe) and Defendant Cecil in their interactions with Plaintiff. Plaintiff purchased a condemned house, did not allow the City access to the condemned house,

4

obtained a demolition permit, and was informed he was not to live in the condemned house or work at night.  About two years passed when he received another notice of condemnation, stating that no work appears to have been done.  Defendant Christian spoke to Plaintiff about not working at the condemned property at night and Defendants Christian and Doe followed up with Plaintiff when he again worked at the condemned property at night.  Plaintiff does not allege that he ever received any liens, was fined, or ever received any citation connected to his condemned property.

Plaintiff's Second Amended Complaint does not state a valid due process violation of the Fourteenth Amendment concerning Plaintiff's property at 207 Power St.  Plaintiff knowingly purchased a condemned property and originally refused the City access to inspect the property. He later obtained a permit for demolition.  Over two years later, Plaintiff received notice that the property was still condemened and it appeared no work had been done at the property. Furthermore, Plaintiff is not claiming the City demolished the property, he is not claiming the property was damaged, and Plaintiff is still in possession of the property.

Any deprivation of liberty before a criminal trial is governed by the Fourth Amendment and its prohibition on unreasonable seizures.  *Johnson v. McCarver*, 942 F.3d 405, 410-411 (8th Cir. 2019) (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017)).  "Since *Manuel*, the Eighth Circuit has recognized that 'when a more specific constitutional provision like the Fourth Amendment applies, the substantive-due-process claim falls away."  *Berry v. City of St. Louis*, 2022 WL 2064605, at *4 (E.D. Mo. 2022) (quoting *Matthews v. McNeil*, 821 F. App'x 666, 667 n.3 (8th Cir. 2020) (unpublished)).  *Johnson* explains that under *Manuel*, any pretrial deprivation of liberty "is governed by the Fourth Amendment," not the Due Process Clause.  *Johnson*, 942 F.3d 405, 410-411.  Plaintiff here talked to Defendants Christian and Doe about working at night at the condemned property, vehicles and trailers Plaintiff had, and was handcuffed during an

investigation of Plaintiff's roommate's son in connection to a dangerous crime.  Again, Plaintiff did not receive any liens, fines, citations, or charges associated with any of his allegations.  Any claims of violation of due process Plaintiff alleges falls under the category described above and would be governed by the Fourth Amendment.  In short, Plaintiff's harassment, abuse, and due process allegations in his Second Amended Complaint fall under the analytical framework of the Fourth Amendment and Plaintiff's allegations do not adequately form the basis for a due process violation under this Framework.

Furthermore, Plaintiff's Second Amended Complaint does not adequately allege any violation of the Fourth Amendment.  Plaintiff was questioned about the vehicles and the license plate that was reported lost, detained for a short period in the investigation into a crime concerning his roommate's son, and Plaintiff never received any fines, liens, citations or charges in connection to these alleged incidents.  Plaintiff claims the handcuffs were too tight when he was detained.  Plaintiff's allegations in his Second Amended Complaint do not amount to a Fourth Amendment Violation.

Plaintiff's claims pursuant to §1983 for Fourth Amendment violations fails because the four corners of Plaintiff's Second Amended Complaint simply do not adequately allege any events or incidents that amount to a violation of the Fourth Amendment.  Plaintiff fails to allege any facts that Defendants had no probable cause to stop and detain Plaintiff and investigate a crime concerning Plaintiff's roommate's son.  He fails to allege any facts that Defendants had no probable cause to tow a vehicle they believed to be stolen.  Even under federal notice pleading standards, this is insufficient to glean a Fourth Amendment violation.

As to the allegation of unlawful seizure of Plaintiff's vehicle, "[P]olice may exercise discretion to impound a vehicle, 'so long as that discretion is exercised according to standard

6

criteria on the basis of something other than suspicion of evidence of criminal activity.'" *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004) (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987)).  The license plate on Plaintiff's vehicle was reported lost and possibly stolen.  As such, Defendant Officer John Doe was reasonable in having the vehicle towed as recovered stolen property.  When Plaintiff came to the police station concerning the vehicle, Defendant Officer John Doe was reasonable in questioning Plaintiff about the lost or stolen license plate and vehicle and quickly was able to validate Plaintiff's story.

Plaintiff's claim pursuant to §1983 fails because the four corners of Plaintiff's Second Amended Complaint simply do not adequately allege any events or incidents that amount to a violation of the Fourth or Fourteenth Amendment.  As a threshold matter, to state a claim for relief pursuant to Section 1983, a plaintiff must plead an underlying constitutional violation.  *See Askew v. Millerd,* 191 F.3d 953, 958 (8th Cir. 1999).  *See also Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001) (identifying a violation of a constitutional right is an "essential element" of Section 1983 liability: "[i]n order to incur §1983 liability, there must first be a violation of the plaintiff's constitutional rights").  Accordingly, Plaintiff's Second Amended Complaint should be dismissed.

**2.  Even if Plaintiff had adequately alleged a constitutional violation, Plaintiff has not adequately alleged the basis for Monell liability in this matter.**

Plaintiff's Second Amended Complaint has also failed to allege any particular action that the City of East Prairie is to have taken, and thus failed to express a *Monell* claim.  "A municipality may only be liable for a constitutional violation resulting from (1) an 'official municipal policy,' (2) an 'unofficial custom,' or (3) 'failure to train or supervise.'" *Poemoceah v. Morton Cnty.*, 117 F. 4th 1049, 1057 (8th Cir. 2024).  The allegations in Plaintiff's Second Amended Complaint do

7

not state a potential basis for triggering municipal liability on one of the bases for doing so under *Monell v. Dept. of Soc. Svcs.*, 436 US 658 (1978) and its progeny.

Plaintiff only vaguely alleges a plan by the City to enforce code by putting liens/fines against properties in order for people to sign over their deeds to the City. However, there are no allegations that Plaintiff ever received financial liens or fines against his property. Plaintiff purchased a condemned property, which he originally refused to grant the City access. He was informed he could not live in the condemned house. This is not enough to sustain a *Monell* claim against the City.

Plaintiff also claims harassment and abuse of authority by Defendants Christian and Officer John Doe. Plaintiff does not claim this is an official municipal policy, unofficial custom, or failure to train. Plaintiff's allegations against Defendants Christian and Doe include interactions between Plaintiff and the police concerning working at night in a condemned house, vehicles or license plates reported lost or stolen, and an investigation into a crime involving Plaintiff's roommate's son, which included multiple law enforcement agencies. Plaintiff was never charged with any citation or crime from any of these events. Furthermore, Plaintiff's allegations about the June 3, 2025, incident where he was handcuffed and his car was searched include Scott County Deputies and State troopers, which could not possibly create municipal liability. For these reasons, Plaintiff failed to state a claim against Defendant City of East Prairie.

Plaintiff's claims are brought against all Defendants pursuant to 42 U.S.C. 1983 and are treated as a claim against the City of East Prairie. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The allegations in Plaintiff's Second Amended Complaint do not state a potential basis for triggering municipal liability on one of the bases for doing so under *Monell v. Dept. of Soc. Svcs.*,

436 US 658 (1978) and its progeny.  For this additional reason, Plaintiff's Second Amended Complaint should be dismissed.

> **3. Plaintiff's Second Amended Complaint should also be dismissed because Defendants Colin Cecil, Lorie Christian and Officer John Doe are entitled to qualified immunity from Plaintiff's claims.**

Plaintiff's Second Amended Complaint should further be dismissed, as Defendants have qualified immunity.  "Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir 2020); (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024).  To overcome qualified immunity at the motion to dismiss stage, a plaintiff 'must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"  *Id*; (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).  Here, as stated above, the four corners of the Second Amended Complaint form a rational basis for the Defendants' actions and dealings with Plaintiff.

Plaintiff has not sufficiently pleaded facts that the defending officers' conduct amounts to violations of constitutional rights.  As to the police harassment and abuse of authority claims, no facts alleged "show the amount of force used was objectively unreasonable under the particular circumstances."  *Baude v. Leyshock*, 23 F.4th 1065, 1073 (8th Cir. 2022).  Courts "evaluate the reasonableness of the force by balancing the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake.'" *Id.* at 1074 (*quoting White v. Jackson*, 865 F3d 1064, 1074 (8th Cir. 2017)).  Whether an official may be held personally liable for an official act generally turns on the objective legal reasonableness of

the official's action.  *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017).  The appropriate inquire is "whether the force used to effect a particular seizure is reasonable."  *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011).  Here, Plaintiff's complaints stem from being questioned concerning the reported lost or stolen license plates and/or vehicle and being detained when the police were investigating a violent crime connected to Plaintiff's roommate's son.  Plaintiff also complains of too tight handcuffs when he was detained.  "For the application of handcuffs to amount to excessive force, there must be something beyond minor injuries."  *Id*. at 907; *(quoting Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005)).  Furthermore, handcuffing "can be a reasonable precaution during a *Terry* stop to protect [officers'] safety and maintain a status quo."  *Blazek v. City of Iowa City*, 761 F. 3d 920, 923 (8th Cir. 2014) (quoting *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006).  Defendant Officers were reasonable in their action.  Temporarily removing Plaintiff and handcuffing him as they conducted their investigation into a crime is a reasonable precaution officers utilize to safely respond to dangerous crimes.  As such, Defendant Officers are entitled to qualified immunity from Plaintiff's claims.

### 4.  Punitive damages are not recoverable against the Defendants.

Plaintiff's Second Amended Complaint seeks to recover punitive damages.  (See Amended Complaint, Part VI Prayer for Relief).  For claims made pursuant to 42 U.S.C. § 1983, punitive damages are not recoverable against a municipality.  *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247 (1981).  Furthermore, as stated above, the claims against the Defendants are treated as a claim against the City of East Prairie.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Therefore, punitive damages against Defendants are not recoverable.

## III.   CONCLUSION

For the foregoing reasons, Defendants East Prairie, Missouri, Colin Cecil, Lori Christian and Officer John Doe respectfully request that this Court grant their Motion to Dismiss Plaintiff's Second Amended Complaint and for any further relief that this Court deems just and proper under the circumstances.

REICHARDT NOCE & YOUNG LLC

By: */s/ Daniel T. Mooney*
Timothy J. Reichardt, #57684MO
Daniel T. Mooney,     #70256MO
12444 Powerscourt Dr. Ste. 160
St. Louis, MO  63131
Telephone No.: 314-789-1199
Fax No.: 314-754-9795
tjr@rnylaw.com
dtm@rnylaw.com
*Attorneys for Defendants*
*East Prairie, Missouri, Colin Cecil and*
*Lorie Christian*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of August, 2025, a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the Court's electronic filing system and served upon all parties of record via the Court's electronic filing system.  I further certify that I signed, or caused my electronic signature to be placed upon, the original of the foregoing document, and sent a true and accurate copy by First Class U.S. Mail to:

Jason Lee Tackett
711 Mitchell St.
East Prairie, MO  63845

*/s/ Daniel T. Mooney*

11