UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JASON LEE TACKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00097-SNLJ |
| | ) | |
| CITY OF EAST PRAIRIE, MISSOURI, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

*Pro se* plaintiff Jason Lee Tackett filed this lawsuit alleging deprivations of his constitutional rights under 42 U.S.C. § 1983 against defendants City of East Prairie, Colin Cecil, Lorie Christian, and Officer John Doe. [Docs. 1, 11]. This matter is now before the Court on the defendants' amended motion to dismiss plaintiff's second amended complaint [Doc. 20].[1] Plaintiff opposes the motion. [Doc. 22]. For the reasons set forth below, the motion to dismiss is granted.

## I. BACKGROUND

The following is a summary of the allegations in the second amended complaint. [Doc. 11]. In January 2022, plaintiff expressed interest in purchasing real property located at 207 Powers Street, East Prairie, Missouri (the "property"), through a tax sale. [*Id*. at ¶¶ 9-11]. Upon inspecting the property, plaintiff observed a condemned placard

[1] The motion is filed on behalf of defendants City of East Prairie, Colin Cecil, and Lorie Christian ("defendants").

posted on the wall adjacent to the front entrance. [*Id*. at ¶ 9]. He subsequently contacted Colin Cecil ("Cecil") at the City's code enforcement office to express his interest in purchasing the property and to inquire about the grounds for its condemnation. [*Id*. at ¶ 10]. Plaintiff alleges that Cecil informed him that the reasons for the condemnation would be provided and that, should the violations be rectified, the property's condemnation status would be rescinded. [*Id*. at ¶ 11].

Plaintiff purchased the property on February 15, 2022. [*Id.* at ¶ 12]. Shortly thereafter, plaintiff again contacted Cecil to inquire about the reasons for the condemnation. [*Id.*]. Cecil asked plaintiff to visit the code enforcement office to sign some papers. [*Id.*]. Plaintiff alleges that he was told no information was available regarding the reasons for the condemnation of the structure on the property. [*Id.*]. Plaintiff conveyed to Cecil that the property would serve as his permanent residence and emphasized the need to understand the violations to ensure prompt resolution. [*Id.*]. Cecil inquired whether plaintiff would permit access to the structure on the property so that Cecil could provide a comprehensive list of required repairs. [*Id.*]. Plaintiff declined to grant Cecil such access. [*Id.*].

Plaintiff alleges that he immediately began removing trash and debris and securing the property by covering all entrances with plywood. [*Id.* at ¶ 13]. He received a letter from the City regarding the property's condemned status, directing him to contact code enforcement and submit a written plan of action. [*Id.* at p. 24]. He then submitted a plan to repair the property, and the City responded with a list of additional items that had to be completed to remove the condemnation status. [*Id.* at p. 29]. The City granted plaintiff a

permit in July 2022 to work on the property. [*Id.* at p. 30].

Plaintiff removed the flooring and drywall at the property to examine the walls of concern to Cecil. [*Id.* at ¶ 18]. One issue of concern was a "bowed" exterior wall. [*Id.*] Plaintiff asserts that he discovered there was no structural defect; rather, vegetation had grown between the layers of siding on the property, giving it the appearance of one. [*Id.* at ¶¶ 18-19]. Subsequently, he left a detailed voicemail for Cecil informing him of his findings but did not receive a response. [*Id.* at ¶ 20]. Plaintiff's next contact with Cecil occurred nearly a year later, when Cecil contacted him to advise that he was not permitted to reside at the property and was prohibited from bringing junk from one property to another. [*Id.* at ¶ 22].

Almost three years after plaintiff purchased the property, he received another condemnation notice. [*Id.* at p. 32]. The notice stated that plaintiff had failed to make the required repairs to remove the condemnation status. [*Id.*]. The letter stated that the structure was to be demolished no later than March 31, 2025. [*Id.* at p. 32]. Plaintiff emailed Cecil after receiving the notice, advising him that the structural concern was vegetation in the wall and that he believed the City was selectively enforcing the code. [*Id.* at ¶ 27]. On March 31, 2025, Christian, in her capacity as the chief of police, stopped at the property and told plaintiff that he could not work there after dark. [*Id.* at ¶ 29]. Plaintiff obtained a demolition permit on March 31, 2025. [*Id.* at p. 35].

On April 9, 2025, plaintiff went to the City's police department to report that his 2002 Chevrolet Suburban had been stolen from the property. [*Id.* at ¶ 30]. Plaintiff was escorted to a room, advised of his rights, and questioned about the report of suspicious

activity at the property. [*Id.*]. Plaintiff was also told that, while investigating the alleged suspicious activity, the officers discovered that the license plate on the Suburban was stolen, so the Suburban was towed. [*Id.*]. Plaintiff told the officer that his roommate had reported the license plate as "lost" but later found it. [*Id.*]. After confirming the information provided by the plaintiff, the officer told the plaintiff he was free to go and could pick up his vehicle. [*Id.*].

On May 9, 2025, at approximately 7:00 p.m., plaintiff was working at the property when Christian and a deputy sheriff arrived and told him he was not permitted to work there at night. [*Id.* at ¶ 32]. Plaintiff informed them that he was aware of the 10:00 p.m. noise ordinance curfew and would finish by then. [*Id.*]. Plaintiff alleges that the officers engaged in a heated argument with him and threatened to arrest him if he did not leave immediately. [*Id.*]. Plaintiff further alleges that he was told that if the officers had to return to the property, he would be arrested for disturbing the peace. [*Id.*].

In addition to the allegations concerning the property, plaintiff also asserts various other claims of misconduct. Plaintiff alleges that the City has an official policy of using deceptive code enforcement tactics to coerce individuals into signing over their property to the City. [*Id.* at ¶¶ 23-24]. He also alleges that Christian and another police officer harassed him by conducting unexpected visits to his residence at 711 Mitchell Street in East Prairie regarding code enforcement issues and to question him about the ownership of a trailer on that property. [*Id.* at ¶ 28]. He also contends that he has been subjected to continual harassment by law enforcement, including, but not limited to: being handcuffed and falsely accused of placing a gun in someone's mouth; an unlawful search of his

vehicle related to the false accusation; the use of excessive force in handcuffing him; and persistent harassment and coercion directed at plaintiff and his roommate to gain access to his property and residence on the evening he was falsely accused of placing a gun in someone's mouth. [*Id*. at ¶¶ 34-38].

Plaintiff alleges that defendants' actions have caused him severe emotional distress, fear for his safety, and have interfered with his ability to maintain his property and live peacefully in his home. [*Id.* at ¶ 40].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a case for failure to state a claim. When considering a Rule 12(b)(6) motion, the court assumes the plaintiff's factual allegations are true and draws all reasonable inferences in the plaintiff's favor. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement." *Id.* (cleaned up).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Further, in determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct courts to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Iqbal*, 556 U.S. at 682, 129 S.Ct. 1937; *Twombly*, 550 U.S. at 567, 127 S.Ct. 1955. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (cleaned up). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

## III. DISCUSSION

To assert a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that a right protected by the United States Constitution or federal law was violated, and that the alleged violation was committed by an individual acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges four counts in the second amended complaint: a Fourteenth Amendment due process claim in count I; a Fourth Amendment unlawful seizure claim in count II; a First Amendment retaliation claim and a Fourteenth Amendment equal protection claim in count III; and a municipal liability claim in count IV. [Doc. 11 at p. 11].

### A. Count I - Fourteenth Amendment Due Process

Under the Fourteenth Amendment, no person shall be deprived of "life, liberty, or

property, without due process of law." U.S. Const. amend. XIV. Ordinarily, due process requires notice and an opportunity to be heard prior to the deprivation of any of the three protected interests. *Board of Regents v. Roth,* 408 U.S. 564, 570 n. 7 (1972). Plaintiff argues that the defendants deprived him of property without due process of law by "failing to provide adequate notice, a list of alleged code violations, and an opportunity to be heard prior to the condemnation and threatened demolition of [his] property." [Doc. 11 at ¶ 45].

Plaintiff knew the property had been condemned before he purchased it in February 2022. [Doc. 11 at ¶¶ 9, 10, 12]. After he purchased the property, the City sent him a letter regarding its condemnation status and directed him to contact code enforcement and submit a written plan of action. [*Id*. at p. 24]. He submitted a plan to repair the property, and the City responded with a detailed list of items that had to be completed to remove the condemnation status. [*Id*. at p. 29]. The City granted plaintiff a permit in July 2022 to work on the property. [*Id*. at p. 30]. Almost three years after he purchased the property, plaintiff received another condemnation notice stating the property had to be demolished. [*Id*. at p. 32]. Plaintiff admits that he had performed "upkeep and maintenance" but "was unable to invest significant additional funds due to financial hardship." [*Id*. at ¶ 26]. In other words, he admits he did not take the necessary steps to remove the property from condemned status. On these facts, there is no merit to the claim that plaintiff was denied notice and an opportunity to be heard prior to the condemnation, given that the property had been in condemnation status before he purchased it and that he was aware he had not complied with the requirements to remove

the condemned status.

Regarding the threat of demolition, the City gave plaintiff a 60-day notice that the condemned structure on the property must be demolished. [Doc. 11 at p. 32]. Two years earlier, the City had provided plaintiff with a list of requirements to remove the condemnation status. [*Id*. at p. 29]. By his own admission, plaintiff had not complied.

Based on the foregoing, plaintiff's allegations fail to state a due process violation. Moreover, "it is well settled that the State of Missouri and its subdivisions and municipalities provide adequate mechanisms for compensating property owners whose property is either taken for public use or demolished because of failure to conform to building code requirements." *Lewis v. City of St. Louis*, 607 F. Supp. 614, 619 (E.D. Mo. 1985), *aff'd,* 786 F.2d 1169 (8th Cir. 1986). "The availability of these mechanisms precludes plaintiff from asserting a claim under 42 U.S.C. § 1983." *Id.* (citing *Barron Collier v. City of Springdale,* 733 F.2d 1311, 1317 (8th Cir. 1984)). Accordingly, the motion to dismiss will be granted as to the Fourteenth Amendment due process claim in count I of the second amended complaint.

**B. Count II - Fourth Amendment Unlawful Seizure**

Plaintiff alleges that Officer John Doe[2] unlawfully seized his 2002 Chevrolet Suburban without a warrant, probable cause, or lawful jurisdiction, and possibly damaged the vehicle in the process. [Doc. 11 at ¶¶ 30, 48]. He also alleges that Officer John Doe

---

[2] Although Officer Doe has not been identified or served, defendants address the claim against the Doe defendant to support the argument that plaintiff's municipal liability claim fails as a matter of law because he has not alleged an underlying constitutional violation.

acted under the direction of Christian in her capacity as the City's chief of police. [*Id.* at ¶ 30]. Plaintiff admits the license plate had been reported as "lost/stolen" but argues that this is merely an administrative alert and that the officer was required to witness some "present criminality" to justify seizing the property. [Doc. 22 at pp. 2-3].

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *U.S. v. Jones*, 565 U.S. 400, 404 (2012). A seizure of property under the Fourth Amendment occurs when there is some meaningful interference with an individual's possessory interest in that property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Meaningful interference includes the exercise of dominion and control over or destruction of the property. *U.S. v. Va Lerie*, 424 F.3d 694, 702 (8th Cir. 2005). To establish a claim for unlawful seizure of property under the Fourth Amendment, a claimant must plausibly allege that the seizure was not reasonable. *Hawkins v. City of Farmington*, 189 F.3d 695, 702 (8th Cir. 1999). "[A]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action." *United States v. Klump*, 536 F.3d 113, 118 (2d Cir. 2008) *quoting Brigham City v. Stuart*, 547 U.S. 398, 404 (2006).

Officer Doe received a report of suspicious activity at the condemned property. When he responded to the scene, the Suburban with the license plates reported lost/ stolen was parked there. Because Officer Doe was advised that the license plates had been reported stolen, the vehicle was towed. When plaintiff went to the police department to report his vehicle as stolen, the situation was quickly resolved. Officer

Doe's actions were objectively reasonable under the circumstances. As such, plaintiff fails to state an unlawful seizure claim, and the motion to dismiss will be granted as to the Fourth Amendment claim in count II of the second amended complaint.

**C. Count III – First and Fourteenth Amendments - Harassment and Abuse of Authority**

Based on the allegations in the second amended complaint, it appears that plaintiff asserts a First Amendment retaliation claim and a Fourteenth Amendment equal protection claim in count III. In support of both claims, plaintiff alleges Christian and Officer Doe engaged in a pattern of harassment, including false accusations of theft, intimidation, and pressure to sell his property, as well as "blurring the roles of law enforcement and code enforcement." [Doc. 11 at ¶ 51].

To state a retaliation claim, a plaintiff must show "(1) that he engaged in a protected activity, (2) that the defendant's actions caused an injury to the plaintiff[] that would chill a person of ordinary firmness from continuing to engage in the activity, and (3) that a causal connection exists between the retaliatory animus and the injury." *Scott v. Tempelmeyer*, 867 F.3d 1067, 1070 (8th Cir. 2017). A plaintiff asserting a § 1983 retaliation claim that he was prosecuted for exercising his First Amendment rights must plead a lack of probable cause for the underlying charge. *Williams v. City of Carl Junction, Missouri*, 480 F.3d 871, 875 (8th Cir. 2007).

To support his retaliation claim, plaintiff must allege sufficient facts to demonstrate that the condemnation was frivolous and that there was no legal basis for the condemnation. *Scott*, 867 F.3d at 1070-1072. He has not done so. The second amended

complaint is devoid of facts demonstrating that the police and code enforcement officials lacked lawful grounds for their actions. Again, plaintiff purchased the property knowing it was in condemned status, and nearly three years later the structure remained in condemned status. By his own admission, plaintiff had not taken the necessary steps to have it removed from that status. To the extent that he alleges harassment or abuse of authority, he provides nothing more than conjecture and his personal perspective regarding various actions taken by municipal officials. Because he fails to establish a necessary element of his retaliation claim, the motion to dismiss will be granted on that claim.

Plaintiff also asserts a claim under the Fourteenth Amendment for an alleged equal protection violation in count III. When a plaintiff pursuing an equal protection claim does not assert membership in a protected class or a violation of fundamental rights, it is requisite for the plaintiff to demonstrate that the defendant "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment." *Nolan v. Thompson*, 521 F.3d 983, 989–990 (8th Cir. 2008) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To plead such a claim, plaintiff must identify comparators who are "in all relevant respects similarly situated." *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009). Further, a plaintiff claiming a "class-of-one" equal protection violation must "provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Nolan*, 521 F.3d at 990.

The second amended complaint does not allege comparators who are "in all

relevant respects similarly situated," nor does it "provide a specific and detailed account of the nature of the preferred treatment of the favored class." As such, plaintiff fails to state a Fourteenth Amendment equal protection claim.

Based on the foregoing, plaintiff fails to state a claim in count III, and the motion to dismiss will be granted as to count III.

**D. Count IV - Municipal Liability**

Plaintiff asserts a municipal liability claim against the City. Because he has not sufficiently pled a deprivation of a constitutional right in counts I, II, or III, his municipal liability claim fails on that ground alone. *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) ("In order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). Even if the plaintiff had sufficiently pled a constitutional deprivation, he fails to allege facts supporting a municipal liability claim.

A municipality cannot be held liable under 42 U.S.C. § 1983 simply because it employs someone who allegedly violated a plaintiff's rights. *Hamilton v. City of Hayti*, 948 F.3d 921, 929 (8th Cir. 2020). Instead, a municipality can be held liable for a constitutional violation only if the violation results from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

To state a *Monell* official policy claim, plaintiff must allege facts showing that a deprivation of his constitutional rights was caused by an official policy of the

municipality. *Ball-Bey v. Chandler*, 415 F.Supp.3d 884, 893 (E.D. Mo. 2019). "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff alleges the City had an official policy of using code enforcement to acquire property. The "official policy" claim is based on statements made by the mayor and Cecil at a public meeting on April 13, 2023. [Doc. 11 at ¶ 23]. During the meeting, Cecil reported that "code would enforce liens and/or fines against people and their properties, and most people will sign over the deeds to not have that hanging over them." [*Id.*]. He also stated that he had found a company that does maintenance for another municipality that could "do the work." [*Id.*]. The "plan" sounds like nothing more than the City choosing to enforce code violations, requiring individuals to either bring their properties up to code or turn them over to the City to do so.

To state a *Monell* custom claim, plaintiff must allege facts showing:

> a) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by a municipality's employees;
>
> b) Deliberate indifference to or tacit authorization of such conduct by the municipality's policymaking officials after notice of that misconduct; and
>
> c) That [the plaintiff] was injured by acts pursuant to the municipality's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (cleaned up). "The pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir.

2018) (cleaned up). A pattern requires similarity and specificity of numerous prior incidents of the specific violation at issue. *Ball-Bey*, 415 F.Supp.3d at 895 (E.D. Mo. 2019) (citing *Peterson v. Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009)).

Plaintiff alleges the City had a custom of selectively enforcing the municipal code. He has not, however, alleged sufficient facts to support his claim. Specifically, he fails to allege facts demonstrating a widespread pattern of selective enforcement. Instead, he relies on a formulaic recitation of the elements of the claim, supported by his own beliefs, speculation, and conclusions, all devoid of factual support. As a result, the municipal liability claim in count IV fails, and the motion to dismiss that claim will be granted.

**E. Doe defendant**

In his response to the motion to dismiss, plaintiff opposes dismissal of the unlawful seizure claim, arguing that "Officer Blake Garrett (Officer John Doe) violated the Fourth Amendment." [Doc. 22 at p. 2]. However, since the filing of the second amended complaint, plaintiff has not filed a motion to substitute any individual for the Doe defendant. Because the Doe defendant has not been identified, substituted, and served in the fourteen months since the filing of the second amended complaint, the Doe defendant will be dismissed pursuant to Federal Rules of Civil Procedure 4(m) and 41(b).

Further, the Court will not *sua sponte* grant plaintiff leave to amend to substitute an individual for the Doe defendant. Leave to amend may be denied on the grounds of "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the non-moving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 715 (8th Cir. 2008).

Because the second amended complaint fails to state a claim, it would be futile to allow plaintiff to substitute an individual for the Doe defendant.

**F. Plaintiff's Response**

In plaintiff's response to the motion to dismiss, he refers to claims not asserted in the second amended complaint. Any claim mentioned in plaintiff's response that is not among the four counts set forth in the second amended complaint is dismissed without prejudice as inadequately pled. Although *pro se* complaints must be liberally construed, they must still contain sufficient facts to support the claims advanced, and the court will not assume facts or claims that are not alleged. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

**IV. CONCLUSION**

For the reasons discussed, the second amended complaint fails to state a claim upon which relief can be granted and, therefore, the Court will grant defendants' Rule 12(b)(6) motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' amended motion to dismiss plaintiff's second amended complaint [Doc. 20] is **GRANTED** and the claims against the City of East Prairie, Missouri, Colin Cecil, and Lorie Christian are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Officer John Doe is **DISMISSED with prejudice**.

**IT IS FINALLY ORDERED** that this matter is **DISMISSED with prejudice** in

its entirety and the Clerk of Court is directed to **CLOSE** the case. A separate Order of Dismissal will accompany this Memorandum and Order.

**SO ORDERED** this 29th day of September, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE